IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| RICARDO JAMAL STROZIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 318-057 |
| | ) |
| PHIL HALL, Warden; CATHY LEWIS, | ) |
| Deputy Warden of Care and Treatment; | ) |
| FRED GAMMAGE, Deputy Warden of | ) |
| Security; and BARBARA GRANT, Unit | ) |
| Manager, individually and in their official | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Ware State Prison ("WSP") in Waycross, Georgia, filed a complaint concerning events allegedly occurring there and at Telfair State Prison ("TSP") in Helena, Georgia, and is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.  SCREENING OF THE COMPLAINT**

   **A.  BACKGROUND**

Plaintiff names the following Defendants: (1) Phil Hall, Warden; (2) Cathy Lewis, Deputy Warden of Care and Treatment; (3) Fred Gammage, Deputy Warden of Security; and (4)

Barbara Grant, Unit Manager. (Doc. no. 1, pp. 1-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On August 4, 2016, Plaintiff was strip searched under command of Deputy Warden Gammage in Building H Dorm 1. (Doc. no. 1-1, p. 1.) He was then escorted by Deputy Warden Gammage and other security personnel to the segregation unit and placed in an isolation cell in Building E Dorm 1. (Id.) Plaintiff was never told why he was being subjected to this treatment. (Id.) On August 11, 2016, after seven days in the isolation cell, Sergeant Knight offered Plaintiff a plea bargain for ninety days commissary, visitation, phone restriction, and no disciplinary isolation. (Id.) Plaintiff was not aware of any charges or disciplinary offenses against him. (Id.) Twenty-seven days later, Plaintiff was still in the isolation cell. (Id. at 1-2.) Outside of his presence, his personal papers with contact information of family and friends were searched and lost. (Id. at 2.) Plaintiff lost several privileges including: (1) his mail was withheld, (2) he was not allowed to call anyone, (3) he could not attend religious services, which he used to do twice a week, (4) he received a new offender schedule detailing he had lost his good prison job as a diet specialist assistant in the kitchen, (5) he was not allowed to shave or get haircuts, and (6) he was denied the use of an electrical socket to power a fan in his cell, which had no air conditioning. (Id.)

On August 29, 2016, Plaintiff was visited by Unit Manager Grant and Counselor Ates who together told Plaintiff he was being recommended for the Tier II Program. (Id.) Plaintiff was told he was being recommended for Tier II because of cellphones and drugs. (Id.) He refuted ever having cellphones or drugs and stated there were never any disciplinary processes. (Id. at 3.) Defendant Grant asked Plaintiff if he would sign the form detailing the Tier II Program change and Plaintiff did. (Id.) However, Plaintiff's door sheet only said he had "failed

2

to follow instructions" as the reason for him being in isolation. (Id.) On September 16, 2016, Plaintiff was escorted from his isolation cell to the shower in handcuffs. (Id.) Plaintiff saw Deputy Warden Gammage on the way to the shower and asked him what was going on. (Id.) Deputy Warden Gammage only responded with a taunt about how much different Plaintiff looked after being in the isolation cell. (Id.)

On October 3, 2016, Plaintiff received a copy of the Georgia Department of Corrections Standard Operating Procedures on Offender Discipline and Involuntary Administrative Segregation. (Id.) Plaintiff then wrote a grievance about his housing situation. (Id.) Warden Hall rejected the grievance because involuntary housing assignment based on administrative segregation was a not an issue for grievance. (Id. at 4.) Plaintiff appealed the grievance denial. (Id.) Plaintiff wrote personal letters to all Defendants explaining procedural errors and received no response. (Id.) On November 8, 2016, Plaintiff was again visited by Unit Manager Grant and Counselor Ates who were conducting a disciplinary segregation thirty-day review and recommending Plaintiff for the Tier II Program again. (Id.) Plaintiff asked why he was still in an isolation cell with no disciplinary report, and Unit Manager Grant responded by stating "they didn't need a disciplinary report to do what they wanted." (Id.) Plaintiff appealed the Tier II recommendation, and the appeal was denied by Warden Hall. (Id. at 4-5.)

Deputy Warden Lewis came to Plaintiff's cell for inspection. (Id. at 5.) Plaintiff asked if she received his letter and why he had not received a hearing in front of the classification committee, of which Deputy Warden Lewis was head, and she responded stating she did not know what was going on. (Id.) On November 17, 2016, Plaintiff was placed in the administrative segregation Tier II Program. (Id.) He began writing each Defendant letters daily about his situation and procedural errors occurring in his case. (Id.) Defendants became angry

3

and upset Plaintiff was informing them of their wrongdoing, and Defendants agreed Plaintiff would be transferred to a disciplinary prison. (Id.) Subsequently, on November 29, 2016, Plaintiff was transferred to WSP in retaliation for writing letters to Defendants pointing out their procedural errors. (Id. at 5-6.) Upon transfer to WSP, unknown officials placed information in Plaintiff's administrative file prompting hardships by WSP officials. (Id. at 6.) Plaintiff was immediately placed in the segregation unit, and TSP officials placed false gang affiliations on his file. (Id.) Plaintiff is seeking injunctive relief, $300,000 in compensatory damages against each Defendant, jointly and severally, and $300,000 in punitive damages against each Defendant, jointly and severally. (Doc. no. 1, p. 5; 1-3, p. 1.)

## B.  DISCUSSION

### 1.  Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Valid Due Process Claim Against Any Defendant For Being Placed In the Tier II Program

Plaintiff asserts his placement in the Administrative Segregation: Tier II Program violates his procedural due process rights because he was not given a proper opportunity to challenge his Tier II classification. (Doc. no. 1-1, pp. 4-5.) Plaintiff's assertion fails to state a claim upon which relief can be granted because, as explained below, he has not alleged a protected liberty interest.

Prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." Kramer v. Donald, 286 F. App'x 674,

676 (11th Cir. 2008); see also Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (finding no liberty interest in transfer to less agreeable prison). However, there are two instances in which a prisoner may claim a protected liberty interest has been violated by placement in punitive segregation: the placement (1) "will inevitably affect the duration of his sentence"; or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). As Plaintiff has not alleged his placement in Tier II will extend the length of his incarceration, the Court turns to the "atypical and significant hardship" prong.

"It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Al-Amin, 165 F. App'x at 738-39 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983), *modified on other grounds*, Sandin, 515 U.S. at 481)); see also Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (stating Due Process Clause does not "create 'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" (citation omitted)). Thus, the Court must consider whether a deprivation of in-prison benefits "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), *adopted by*, 2017 WL 343638 (M.D. Ga. Jan. 23, 2017). To meet this pleading requirement, Plaintiff "must state or allege *facts* to show an 'atypical and significant hardship.'" Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015). Stated otherwise, for the Court to determine whether the state has created a protected liberty

6

interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief. See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

While Plaintiff describes conditions in isolation, Plaintiff has not provided any information about conditions of confinement in Tier II, let alone how those conditions pose an "atypical and significant hardship" on him. Prior to being placed in the Tier II program, Plaintiff alleges he was in an isolation cell from August 4, 2018 to November 17, 2018. (Doc. no. 1-1, p. 3-5.) Plaintiff only alleges he was placed in Tier II and does not mention the conditions of confinement. (Doc. no. 1-1, pp. 4-5.) Therefore, Plaintiff fails to state a procedural Due Process claim against any Defendant for being placed in Tier II.

Although Plaintiff complains about the procedure by which he was placed in the Tier II Program, he does not appear to allege a substantive Due Process claim. However, in an abundance of caution, the Court will address any such potential claim. As with his procedural Due Process claim, Plaintiff must first establish an atypical and significant hardship implicating a constitutionally protected liberty interest in order to state a substantive Due Process claim based on prison conditions. See Smith v. Deemer, 641 F. App'x 865, 868-69 (11th Cir. 2016) (holding prisoner plaintiff failed to state substantive and procedural due process claims regarding conditions of confinement because he did not allege facts sufficient to establish constitutionally protected liberty interest); Hill, 2016 WL 7972197, at *7 (same).

As discussed in detail above, Plaintiff has not alleged conditions in the Tier II Program constitute an atypical and significant hardship, and thus no constitutionally

7

protected liberty interest is implicated. Accordingly, Plaintiff fails to state either a substantive or procedural Due Process claim.

### 3. Plaintiff Fails to State a Valid Claim against any Defendant for the Loss of His Personal Property

Plaintiff alleges his property was searched and personal papers with contact information of family and friends was lost. (Doc. no. 1-1, p. 2.) However, Plaintiff does not explain how any named Defendants are responsible for the loss of his personal property. As stated above, "the complaint must state with some minimal particularity how the over acts of the defendant cause a legal wrong." Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Plaintiff has failed to meet this minimal requirement as to these allegations. Therefore, Plaintiff fails to state a claim based on these allegations.

Additionally, the Fourteenth Amendment does not protect against all deprivations of property, only against deprivations that occur "without due process of law." Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986). Georgia has created a civil cause of action for the wrongful deprivation of personal property. O.C.G.A. § 51-10-1. This statutory provision covers the unauthorized deprivation of an inmate's property by prison officials. Grant v. Newsome, 411 S.E.2d 796, 799 (Ga. App. 1991). The statutory cause of action constitutes an adequate post-deprivation remedy under Parratt. See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987). Thus, Plaintiff has an adequate remedy at State law, and he fails to state a valid § 1983 claim against any Defendant for the loss of any personal property.

### 4. Plaintiff Fails to State an Official Capacity Claim for Monetary Relief Against Defendants

Plaintiff sues Defendants individually and in their official capacities. (Doc. no. 1, pp. 2-3.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). It is clear from Plaintiff's complaint Defendants are prison officials, and Plaintiff is seeking money damages. Therefore, Plaintiff's official capacity claims against these Defendants for monetary relief fail as a matter of law and should be dismissed.

### 5. Plaintiff Fails to State a Claim Under the Religious Land Use and Institutionalized Persons Act Because He Does Not Allege There were No Alternative Means of Exercising His Religion

Plaintiff claims Deputy Warden Gammage and Unit Manager Grant knowingly deprived Plaintiff of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by not allowing him to attend religious services while in an isolation cell. (Doc. no. 1-1, p. 2; 1-5, p. 1.) Prisoners retain their right to free exercise of their religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Jackson v. McLaughlin, 2016 WL 1237846, at *3 (M.D. Ga. Jan. 12, 2016). To state a claim under RLUIPA, "a prisoner must demonstrate that Defendants are imposing a burden on the free exercise of his religious beliefs – such that 'under the restrictions imposed' he is 'deprived of all means of practicing his religion.'" Jackson, 2016 WL 1237846, at *3 (quoting O'Lone, 482 U.S. at 348; McCorkle v. Johnson, 881 F.2d 993, 996 (11th Cir. 1989); see also Coleman v. Danforth, 2016 WL 7116116, at *7 (M.D. Ga. June 1, 2016) (finding no RLUIPA claim when prisoner denied participation in group worship did not allege no alternative means of exercising his religion).

Here, there is nothing in the Complaint to indicate Plaintiff was deprived of all means of practicing his religion. Plaintiff only complains he was not allowed to attend religious services

while in an isolation cell. (Doc. no. 1-1, p. 2.) The restriction of being in an isolation cell alone does not deprive Plaintiff of practicing his religion in any form. See Jackson, 2016 WL 1237846, at *3 ("Although Plaintiff alleges that he is denied group worship, there is simply nothing in the Complaint to suggest that Plaintiff has no alternative means of exercising the asserted right while in Tier II segregation.") Therefore, Plaintiff fails to state a claim under RLUIPA.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's RULIPA claims, official capacity claims for monetary damages, due process claims for being placed in the Tier II Program, and claims against Defendants for loss or damage to his property be **DISMISSED** for failure to state a claim. In a companion Order, the Court has allowed to proceed Plaintiff's due process claims against Deputy Warden Gammage and Unit Manager Grant for placing Plaintiff in an isolation cell for extended periods of time without due process and retaliatory transfer claims against all Defendants.

SO REPORTED and RECOMMENDED this 11th day of December, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA