IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| RICARDO JAMAL STROZIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     CV 318-057 |
| | ) |
| PHIL HALL, Warden; CATHY LEWIS, | ) |
| Deputy Warden of Care and Treatment; | ) |
| FRED GAMMAGE, Deputy Warden of | ) |
| Security; and BARBARA GRANT, Unit | ) |
| Manager, individually and in their official | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |

_____

**O R D E R**
_____

Plaintiff, currently incarcerated at Ware State Prison ("WSP") in Waycross, Georgia, filed a complaint concerning events allegedly occurring there and at Telfair State Prison ("TSP") in Helena, Georgia, and is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.     SCREENING OF THE COMPLAINT**

Plaintiff names the following Defendants: (1) Phil Hall, Warden; (2) Cathy Lewis, Deputy Warden of Care and Treatment; (3) Fred Gammage, Deputy Warden of Security; and (4)

Barbara Grant, Unit Manager. (Doc. no. 1, pp. 1-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On August 4, 2016, Plaintiff was strip searched under command of Deputy Warden Gammage in Building H Dorm 1. (Doc. no. 1-1, p. 1.) He was then escorted by Deputy Warden Gammage and other security personnel to the segregation unit and placed in an isolation cell in Building E Dorm 1. (Id.) Plaintiff was never told why he was being subjected to this treatment. (Id.) On August 11, 2016, after seven days in the isolation cell, Sergeant Knight offered Plaintiff a plea bargain for ninety days commissary, visitation, phone restriction, and no disciplinary isolation. (Id.) Plaintiff was not aware of any charges or disciplinary offenses against him. (Id.) Twenty-seven days later, Plaintiff was still in the isolation cell. (Id. at 1-2.) Outside of his presence, his personal papers with contact information of family and friends were searched and lost. (Id. at 2.) Plaintiff lost several privileges including: (1) his mail was withheld, (2) he was not allowed to call anyone, (3) he could not attend religious services, which he used to do twice a week, (4) he received a new offender schedule detailing he had lost his good prison job as a diet specialist assistant in the kitchen, (5) he was not allowed to shave or get haircuts, and (6) he was denied the use of an electrical socket to power a fan in his cell, which had no air conditioning. (Id.)

On August 29, 2016, Plaintiff was visited by Unit Manager Grant and Counselor Ates who together told Plaintiff he was being recommended for the Tier II Program. (Id.) Plaintiff was told he was being recommended for Tier II because of cellphones and drugs. (Id.) He refuted ever having cellphones or drugs and stated there were never any disciplinary processes. (Id. at 3.) Defendant Grant asked Plaintiff if he would sign the form detailing the Tier II

2

Program change and Plaintiff did. (Id.) However, Plaintiff's door sheet only said he had "failed to follow instructions" as the reason for him being in isolation. (Id.) On September 16, 2016, Plaintiff was escorted from his isolation cell to the shower in handcuffs. (Id.) Plaintiff saw Deputy Warden Gammage on the way to the shower and asked him what was going on. (Id.) Deputy Warden Gammage only responded with a taunt about how much different Plaintiff looked after being in the isolation cell. (Id.)

On October 3, 2016, Plaintiff received a copy of the Georgia Department of Corrections Standard Operating Procedures on Offender Discipline and Involuntary Administrative Segregation. (Id.) Plaintiff then wrote a grievance about his housing situation. (Id.) Warden Hall rejected the grievance because involuntary housing assignment based on administrative segregation was a not an issue for grievance. (Id. at 4.) Plaintiff appealed the grievance denial. (Id.) Plaintiff wrote personal letters to all Defendants explaining procedural errors and received no response. (Id.) On November 8, 2016, Plaintiff was again visited by Unit Manager Grant and Counselor Ates who were conducting a disciplinary segregation thirty-day review and recommending Plaintiff for the Tier II Program again. (Id.) Plaintiff asked why he was still in an isolation cell with no disciplinary report, and Unit Manager Grant responded by stating "they didn't need a disciplinary report to do what they wanted." (Id.) Plaintiff appealed the Tier II recommendation, and the appeal was denied by Warden Hall. (Id. at 4-5.)

Deputy Warden Lewis came to Plaintiff's cell for inspection. (Id. at 5.) Plaintiff asked if she received his letter and why he had not received a hearing in front of the classification committee, of which Deputy Warden Lewis was head, and she responded stating she did not know what was going on. (Id.) On November 17, 2016, Plaintiff was placed in the

3

administrative segregation Tier II Program.  (Id.)  He began writing each Defendant letters daily about his situation and procedural errors occurring in his case.  (Id.)  Defendants became angry and upset Plaintiff was informing them of their wrongdoing, and Defendants agreed to Plaintiff would be transferred to a disciplinary prison.  (Id.)  Subsequently, on November 29, 2016, Plaintiff was transferred to WSP in retaliation for writing letters to Defendants pointing out their procedural errors.  (Id. at 5-6.)  Upon transfer to WSP, unknown officials placed information in Plaintiff's administrative file prompting hardships by WSP officials.  (Id. at 6.)  Plaintiff was immediately placed in the segregation unit, and TSP officials placed false gang affiliations on his file.  (Id.)  Plaintiff is seeking injunctive relief, $300,000 in compensatory damages against each Defendant, jointly and severally, and $300,000 in punitive damages against each Defendant, jointly and severally.  (Doc. no. 1, p. 5; 1-3, p. 1.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has *arguably* stated a Fourteenth Amendment due process claim against Deputy Warden Fred Gammage and Unit Manager Barbara Grant for placing Plaintiff in an isolation cell for extended periods of time.  See Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007) (citing Kirby v. Siegelman, 195 F.3d 1285, 1290-91 (11th Cir. 1999)) (stating due process claims exist for prisoners where deprivation of benefits bestowed is atypical and significant hardship); see also Sandin v. Conner, 515 U.S. 472, 484 (1995); Wolff v. McDonnell, 418 U.S. 539, 558 (1974).

Additionally, Plaintiff has *arguably* stated a claim for retaliatory transfer against all Defendants for transferring Plaintiff to WSP for filing grievances concerning his isolation

and placement in the Tier II program. See Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir.2008) (letter to warden "constituted a protected exercise of his free speech rights"); Bennett v. Hendrix, 423 F.3d 1247, (11th Cir. 2005) ("A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."). In a companion Report and Recommendation, the Court recommends dismissal of Plaintiff's Religious Land Use and Institutionalized Persons Act claims, official capacity claims for monetary relief, due process claims for being placed in the Tier II program, and due process claims for damage to his property.

## II.     INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants. The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that the defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendant to effect service.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or upon their defense attorney if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by Defendants. Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. Defendants shall ensure that Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See

generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 11th day of December, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA