IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| RICARDO JAMAL STROZIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 318-057 |
| ) | |
| PHIL HALL, Warden; CATHY LEWIS, ) | |
| Deputy Warden of Care and Treatment; ) | |
| FRED GAMMAGE, Deputy Warden of ) | |
| Security; and BARBARA GRANT, Unit ) | |
| Manager, individually and in their official ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Ware State Prison ("WSP") in Waycross, Georgia, brought this case pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Telfair State Prison ("TSP") in Helena, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, (doc. no. 22), Plaintiff's claims for retaliatory transfer be **DISMISSED**, and Plaintiff's injunctive relief claims be **DISMISSED**.

**I.    BACKGROUND**

    **A.    Plaintiff's Complaint**

Plaintiff names the following Defendants: (1) Phil Hall, Warden; (2) Cathy Lewis,

Deputy Warden of Care and Treatment; (3) Fred Gammage, Deputy Warden of Security; and (4) Barbara Grant, Unit Manager. (Doc. no. 1, pp. 1-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present motion, the facts are as follows.

On August 4, 2016, Plaintiff was strip searched under command of Deputy Warden Gammage in Building H Dorm 1. (Doc. no. 1-1, p. 1.) He was then escorted by Deputy Warden Gammage and other security personnel to the segregation unit and placed in an isolation cell in Building E Dorm 1. (Id.) Plaintiff was never told why he was being subjected to this treatment. (Id.) On August 11, 2016, after seven days in the isolation cell, Sergeant Knight offered Plaintiff a plea bargain for ninety days commissary duty, visitation, phone restriction, and no disciplinary isolation. (Id.) Plaintiff was not aware of any charges or disciplinary offenses against him. (Id.) Twenty-seven days later, Plaintiff was still in the isolation cell. (Id. at 1-2.) Outside of his presence, his personal papers with contact information of family and friends were searched and lost. (Id. at 2.) Plaintiff lost several privileges including: (1) his mail was withheld, (2) he was not allowed to call anyone, (3) he could not attend religious services, (4) he received a new offender schedule detailing he had lost his good prison job as a diet specialist assistant in the kitchen, (5) he was not allowed to shave or get haircuts, and (6) he was denied use of an electrical socket to power a fan in his cell, which had no air conditioning. (Id.)

On August 29, 2016, Plaintiff was visited by Unit Manager Grant and Counselor Ates who together told Plaintiff he was being recommended for the Tier II Program because of cellphones and drugs. (Id.) He refuted ever having cellphones or drugs and stated there were never any disciplinary processes. (Id. at 3.) Defendant Grant asked Plaintiff if he would sign the form detailing the Tier II Program change and Plaintiff did. (Id.) However, Plaintiff's door

2

sheet only said he had "failed to follow instructions" as the reason for him being in isolation. (Id.) On September 16, 2016, Plaintiff was escorted from his isolation cell to the shower in handcuffs. (Id.) Plaintiff saw Deputy Warden Gammage on the way to the shower and asked him what was going on. (Id.) Deputy Warden Gammage only responded with a taunt about how much different Plaintiff looked after being in the isolation cell. (Id.)

On October 3, 2016, Plaintiff received a copy of the Georgia Department of Corrections Standard Operating Procedures on Offender Discipline and Involuntary Administrative Segregation. (Id.) Plaintiff then wrote a grievance about his housing situation. (Id.) Warden Hall rejected the grievance because involuntary housing assignments based on administrative segregation was a not a grievable issue. (Id. at 4.) Plaintiff appealed the grievance denial. (Id.) Plaintiff wrote personal letters to all Defendants explaining procedural errors and received no response. (Id.) On November 8, 2016, Plaintiff was again visited by Unit Manager Grant and Counselor Ates who were conducting a disciplinary segregation thirty-day review and recommending Plaintiff for the Tier II Program again. (Id.) Plaintiff asked why he was still in an isolation cell with no disciplinary report, and Unit Manager Grant responded by stating "they didn't need a disciplinary report to do what they wanted." (Id.) Plaintiff appealed the Tier II recommendation, and the appeal was denied by Warden Hall. (Id. at 4-5.)

Deputy Warden Lewis came to Plaintiff's cell for inspection. (Id. at 5.) Plaintiff asked if she received his letter and why he had not received a hearing in front of the classification committee, of which Deputy Warden Lewis was head, and she responded she did not know what was going on. (Id.) On November 17, 2016, Plaintiff was placed in the administrative

3

segregation Tier II Program and remained in an isolation cell. (Id.; doc. no. 13, pp. 1-2.) He began writing each Defendant letters daily about his situation and procedural errors occurring in his case. (Doc. no. 1-1, p. 5.) Defendants became angry and upset Plaintiff was informing Defendants of their wrongdoing, and Defendants agreed Plaintiff would be transferred to a disciplinary prison. (Id.) Subsequently, on November 29, 2016, Plaintiff was transferred to WSP in retaliation for writing letters to Defendants pointing out their procedural errors. (Id. at 5-6.) Upon transfer to WSP, unknown officials placed information in Plaintiff's administrative file prompting hardships by WSP officials. (Id. at 6.) Plaintiff was immediately placed in the segregation unit, and TSP officials placed false gang affiliations in his file. (Id.) Plaintiff is seeking injunctive relief, $300,000 in compensatory damages against each Defendant, jointly and severally, and $300,000 in punitive damages against each Defendant, jointly and severally. (Doc. no. 1, p. 5; doc. no. 1-3, p. 1.)

### B. Grievance History

Defendants attached Plaintiff's grievance history to their motion to dismiss. (Doc. no. 22-2, p. 25.) Plaintiff's grievance history show he filed five grievances between January 8, 2014 and August 23, 2017. (Id.) Plaintiff filed only two grievances during August to November 2016, the relevant period of this case. (Id.) Plaintiff filed Grievance 227741 on September 20, 2016, which was categorized as a policy/procedural challenge. (Id.) Grievance 227741 was "dropped by offender" on October 19, 2016. (Id.) Plaintiff also filed Grievance 227738 on September 20, 2016, which was denied on appeal on April 3, 2017. (Id.) Plaintiff admits he did not file any grievance relating to his retaliatory transfer allegations. (Doc. no. 27-1, p. 9.)

4

### C. Defendants' Motion to Dismiss

On March 19, 2019, Defendants filed a motion to dismiss alleging (1) Plaintiff failed to exhaust administrative remedies as to his First Amendment retaliatory transfer claim; (2) Plaintiff failed to state Fourteenth Amendment due process claims against Defendants Gammage and Grant for placing Plaintiff in an isolation cell from August 4, 2016 to November 17, 2016; (3) Plaintiff failed to state Fourteenth Amendment due process claims against all Defendants for placing Plaintiff in Tier II isolation cell from November 17, 2016 to November 24, 2016; and (4) Plaintiff is not entitled to the injunctive relief he request and, even if he was, his request is now moot upon being transferred from TSP. (Doc. no. 27-1.) On May 3, 2019, Plaintiff responded to Defendants' motion, arguing (1) he did not fail to exhaust his First Amendment retaliatory transfer claim because it was non-grievable; (2) he did properly allege due process claims against Defendants; and (3) his request for injunctive relief is narrowly drawn and necessary even after his transfer. (Doc. no. 27-1.)

## II. DISCUSSION

### A. Plaintiff's Exhaustion of Administrative Remedies.

#### 1. The Legal Framework

Where, as here, a defendant has filed a motion to dismiss partially based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's

motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to

complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules

governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### 2. The Administrative Grievance Procedure.

Based on the date of the alleged incident, the administrative grievance procedure applicable in this case is the version of the GDOC's Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015. (Doc. no. 22-2, pp. 7-23.) The administrative remedies procedure commences with the filing of the Original Grievance, and the inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to sign the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(4). "The complaint on the Grievance Form must be a single issue/incident." Id. § VI(D)(2). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(3), (5)(a). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

Grievances involving sexual assault or physical force involving non-compliance with policies are automatically forwarded to Internal Investigations Unit and/or the PREA Coordinator. Id. § VI(D)(8)(a). Once referred, the grievance process terminates, and the inmate will receive notice and must sign a copy of said notice to be filed with the prison's local files. Id. § VI(D)(8)(b-d). Internal Investigations has ninety days from the date of the original grievance to issue a decision. Id. § VI(D)(8)(e). An extension of up to seventy days may be granted. Id. § VI(D)(8)(f). An inmate may not appeal the Warden's decision to refer the grievance to the Internal Investigations. Id. § VI(D)(8)(h).

The inmate then has seven calendar days from the date they receive the response from the Warden or Internal Investigations to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete. Id. § VI(E)(7).

### 3. Plaintiff Failed to Exhaust His Administrative Remedies as to His First Amendment Retaliatory Transfer Claim

Taking Plaintiff's factual allegations as true according to the first step under Turner, Plaintiff's claims are subject to dismissal because Plaintiff failed to allege he filed any grievance relating to a retaliatory transfer to WSP. (See doc. no. 1, pp. 5-6.) In fact, in his response to Defendants' motion to dismiss, Plaintiff does not dispute he failed to file any

grievance relating Defendants' alleged retaliatory transfer. (Doc. no. 27-1, p. 9.) Therefore, in accordance with the first step of the Turner analysis, Plaintiff's retaliatory transfer claim is subject to dismissal. Turner, 541 F.3d 1082-83.

Even if Plaintiff's retaliatory transfer claim was not subject to dismissal under the first step of Turner, Plaintiff's claim would be dismissed under the second step of Turner because he failed to submit a grievance concerning the events alleged to have occurred on November 29, 2016. (See doc. no. 22-2, p. 25.) Plaintiff had ten calendar days from the date of transfer on November 29, 2016, to file a formal grievance involving any form of retaliation. See SOP IIB05-0001 § VI(B)(3) and VI(D)(4). Plaintiff's grievance history submitted by Defendants shows Plaintiff did not file any grievance with ten days of the transfer, and Plaintiff does not dispute this fact. (Id.; doc. no. 27-1, p. 9.) Therefore, Plaintiff failed to exhaust administrative remedies under the second step of Turner as well.

Plaintiff argues Turner and the exhaust requirement do not apply to him because prisons transfers are a non-grievable issue. (Doc. no. 27-1, pp. 6-10.) However, Plaintiff's argument is unavailing in light of the clear language of the relevant SOP provisions. Plaintiff cites to SOP IIB05-0001 § VI(B)(2)(f), along with case law from outside the Eleventh Circuit, for the proposition that "[t]ransfers of offenders between institutions" constitutes a non-grievable issue and non-grievable issues do not need to be exhausted. (See doc. no. 27-1, pp. 6-10); SOP IIB05-0001 § VI(B)(2)(f). However, he ignores SOP IIB05-0001 § VI(B)(3), a provision within the same section, which states, "[n]otwithstanding the above, an offender may file a grievance alleging retaliation or harassment, regardless of the form of the alleged retaliation or harassment." Although the simple transfer of an inmate standing alone

does not present a grievable issue, the transfer of an inmate coupled with a retaliation claim can be grieved and indeed must be grieved in order to satisfy the administrative exhaustion requirement. See Holmes v. Dalrymple, CV 312-099, 2013 WL 2384102 (S.D. Ga. May 30, 2013) (analyzing substantially similar SOP provisions and arguments as in this case and holding failure to exhaust retaliation even though in form of transfer was fatal); Forehand v. Sapp, No. 5:18-CV-230-MTT-CHW, 2018 WL 5316031, *6 n.4 (M.D. Ga. Sept. 21, 2018) (analyzing same arguments as here and citing Holmes for same proposition), *adopted by* 2018 WL 5316358 (M.D. Ga. Oct. 26, 2018).

Thus, because retaliation claims are grievable no matter the form and Plaintiff never filed a grievance concerning Defendants' alleged retaliatory transfer, he fails to satisfy the exhaustion requirement. See Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159. Therefore, Plaintiff's claim is procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendants' motion to dismiss should be granted on this issue.

### B. Legal Standard for Rule 12(b)(6) Motion

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014). The Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim

for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

With these principles in mind, the Court turns its attention to the remaining arguments in the motion to dismiss that do not relate to the exhaustion issue.

### C. Plaintiff States Valid Claims for Fourteenth Amendment Due Process Violations

"Prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008); see also Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (finding no liberty interest in transfer to less agreeable prison). However, there are two instances in which a prisoner may claim a protected liberty interest has been violated by placement in

punitive segregation: the placement (1) "will inevitably affect the duration of his sentence"; or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). Because Plaintiff never alleged his placement in isolation both before and after Tier II will extend the length of his incarceration, Plaintiff due process claims rely on the "atypical and significant hardship" prong.

"It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Al-Amin v. Donald, 165 F. App'x 733, 738-39 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983), *modified on other grounds*, Sandin, 515 U.S. at 481)); see also Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (stating Due Process Clause does not "create 'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" (citation omitted)). Thus, the Court must consider whether a deprivation of in-prison benefits "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), *adopted by*, 2017 WL 343638 (M.D. Ga. Jan. 23, 2017). To meet this pleading requirement, Plaintiff "must state or allege *facts* to show an 'atypical and significant hardship.'" Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015). Stated otherwise, for the Court to determine whether the state has created a protected liberty

interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief. See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Taking Plaintiff's allegations as true and liberally construing his *pro se* complaint, Plaintiff properly stated Fourteenth Amendment due process claims against Defendants Gammage and Grant for initially placing him in isolation and against all Defendants for continuing such isolation while placing Plaintiff into the Tier II program. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (requiring liberal construction of *pro se* pleadings); Haines v. Kerner, 404 U.S. 519, 520 (1972) (same). Plaintiff alleges he was in general population and then forced into an isolation cell without any hearing or disciplinary report, and the explanations given for such treatment included inconsistent reasonings and a statement by Unit Manager Grant that "they didn't need a disciplinary report to do what they wanted." (Doc. no. 1-1, pp. 1-5.) This change resulted in multiple lost privileges, namely the inability to shave, have access to an electrical outlet, attend group religious services, and loss of his prison job. (Id.) This continued from August 4, 2016 to November 29, 2016, when he was transferred to WSP. (Id.)

Plaintiff further alleges these deprivations were in violation of the GDOC's SOP and he was entitled to some hearing or process before being placed in involuntary disciplinary isolation. (Id.) Throughout the complaint, Plaintiff alleges Defendants either placed and kept Plaintiff in isolation or were fully aware of his isolation. Thus, liberally construing these facts as true, the Court can draw reasonable inferences that Defendants placed Plaintiff in conditions amounting to atypical and significant hardship, violating Plaintiff's Fourteenth

14

Amendment due process rights. See Quintanilla v. Bryson, 730 F. App'x 738, 745 (11th Cir. 2018) (finding prisoner plaintiff stated plausible due process claim where was held in administrative segregation without any explanation).

Defendants argue the Eleventh Circuit has held placements in isolation or segregation longer than the roughly 105 and 12 days spent by Plaintiff did not amount to atypical and significant hardship to be a due process violations. (Doc. no. 22-1, p. 8.) However, the cases Defendants cite were both at the summary judgment stage and held that the difference between conditions in general population and administrative segregation were generally equivalent. See Morefield v. Smith, 404 F. App'x 443, 446 (11th Cir. 2010) (finding four-year administrative segregation was not due process violation where conditions were essentially the same); Al-Amin, 165 F. App'x at 739 (finding three-year administrative segregation was not enough where conditions did not change). Here, the Court must take the facts alleged in Plaintiff's complaint as true unlike at summary judgment, and Plaintiff specifically alleges the conditions in general population were different from the conditions in isolation, as evidenced by his allegation of lost privileges. Thus, Plaintiff claims are different at this stage than those in Morefield and Al-Amin.

Additionally, Defendants argue Plaintiff received proper process but simply does not like the result. (Doc. no. 22-1, p. 9.) However, liberally construing Plaintiff's complaint, no process was given. Plaintiff alleges he was entitled to a hearing or a disciplinary report at the least but did not receive either. (Doc. no. 11-1, pp. 1-5.) Defendants attempt to cite Plaintiff's complaint wherein he alleges he appealed his placement to "involuntary disciplinary segregation" to

15

Warden Hall, who disagreed with Plaintiff and sided with the recommendation of Unit Manager Grant to keep Plaintiff there. (Doc. no. 22-1, p. 9.) Plaintiff also alleged he was improperly placed in involuntary disciplinary segregation without any disciplinary report, which allegedly was a violation of SOP. (Doc. no. 11-, p. 4.) Thus, taken as a whole, these allegations show Plaintiff was not being told why he was in involuntary disciplinary segregation and was appealing the lack of reasoning. See Quintanilla, 730 F. App'x at 745. Therefore, liberally construing Plaintiff's complaint, Plaintiff has stated claims for Fourteenth Amendment due process violations. Accordingly, Defendants' motion to dismiss for failure to state a claim should be denied on this issue.

### D. Plaintiff May Not Sue Defendants for Injunctive Relief

The only other basis for dismissal argued by Defendants relates purely to the type of relief sought by Plaintiff for all his claims. Defendants argue Plaintiff's request for injunctive relief cannot be narrowly drawn by the Court and, even if it could, such injunctive relief is moot based on Plaintiff's transfer to WSP. (Doc. no. 22-1, pp. 9-10.) Plaintiff seeks injunctive relief against each Defendant in their official and individual capacities to "cease their violations of [his] constitutionally protected rights" and removal of "negative information placed in [his] administrative file." (Doc. no. 1, p. 5.) In response, Plaintiff argues his request is narrowly drawn and the information placed in Plaintiff's administrative profile continues to negatively affect him. (Doc. no. 27-1, p. 25.)

The Eleventh Amendment bars a § 1983 official capacity claim for injunctive relief. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984) ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against

a State is barred regardless of whether it seeks damages or injunctive relief.") (citing Cory v. White, 457 U.S. 85, 91 (1982)); see also Smith v. Dekalb County Jail, No. 1:13-cv-1629, 2014 WL 129509, at * 3 (N.D. Ga. Jan. 14, 2014) ("[T]he Eleventh Amendment bars a § 1983 federal action against the State of Georgia, whether for damages or injunctive relief." (citations omitted)). Therefore, Plaintiff's official capacity claims for injunctive relief fail as a matter of law and should be dismissed.

Furthermore, Plaintiff's transfer out of TSP renders moot all individual capacity claims for injunctive relief he seeks against Defendants, and any problems he currently experiences at WSP cannot be remedied by enjoining TSP or the individual Defendants, who are not employed at WSP. See McKinnon v. Talladega Cty., 745 F.2d 1360, 1363 (11th Cir. 1984) (holding general rule is prisoner's transfer to new prison moots claims for injunctive relief); Davila v. Marshall, 649 F. App'x 977, 979-80 (11th Cir. 2016) (citing Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988)) ("[A] prisoner's request for injunctive relief relating to the conditions of his confinement becomes moot when he is transferred.") Plaintiff has not argued any exception to the mootness doctrine applies, and, therefore, Plaintiff's official and individual capacity claims for injunctive relief fail and should be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, (doc. no. 22), Plaintiff's claims for retaliatory transfer be **DISMISSED**, and Plaintiff's claims for

injunctive relief be **DISMISSED**.  The only claims left for further litigation are Plaintiff's (1) Fourteenth Amendment due process claim against Deputy Warden Fred Gammage and Unit Manager Barbara Grant for placing Plaintiff in an isolation cell for extended periods of time; and (2) Fourteenth Amendment due process claim against all Defendants for remaining in an isolation cell upon being placed in the Tier II Program until his transfer to WSP twelve days later.

SO REPORTED and RECOMMENDED this 11th day of July, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA